Rivera, J.
(dissenting). On constraint of People v Ludwig (24 NY3d 221 [2014]), I agree that defense counsel may not be considered ineffective for failing to object during the People’s case-in-chief to testimony about the victim’s disclosure of defendant’s sexual abuse. However, the rule adopted in Ludwig is a narrow one, justified on the theoretical assumption that such testimony is admitted to assist the jury in understanding the events leading to a defendant’s arrest (id. at 231), and not for its truth about the victim’s allegations (id., citing People v Gregory, 78 AD3d 1246 [3d Dept 2010]). Accordingly, while the prosecutor here could elicit the testimony, he exceeded the bounds of permissible summation by advocating that the victim’s disclosure was proof of the abuse.
The prosecutor’s exhortation to the jury was an invitation to misuse the testimony, and was especially prejudicial to the defense because the People lacked corroborating physical evidence of the abuse, the victim was the sole witness to defendant’s actions, and the ultimate determination of guilt turned on the victim’s credibility. Under such circumstances, defense counsel’s failure to timely object and request an instruction directing the jury to ignore the prosecutor’s argument constitutes ineffective assistance, mandating reversal and a new trial. Therefore, I dissent.
The premise of Ludwig is that testimony from a witness that the victim disclosed abuse is admissible for the “legitimate nonhearsay purposes” of “explaining the investigative process and completing the narrative of events leading to the defendant’s arrest” (id. at 231-232). According to this reasoning, the testimony is admissible solely “to depict for the jury the circumstances attendant to the disclosure that triggered the investigation” (id. at 232). However, I continue to believe that Ludwig was wrongly decided because, as the dissent in that case explained, the majority’s approach “eviscerates the hearsay rule and allows wholesale circumvention of the prompt outcry rule by countenancing the admission of prior consistent statements that provide a ‘narrative’ or ‘investigative purpose’ even where the investigative purpose is not in issue” (Ludwig, 24 NY3d at 235 [Lippman, Ch. J., dissenting]). Notwithstanding the Ludwig majority’s determination to the contrary, “these *698 statements are obviously introduced to bolster the complainant’s credibility and establish the truth of the accusation” (id. at 236 [Lippman, Ch. J., dissenting]), and do little to ensure the reliability of the victim’s testimony (id. at 237).
The analytic error of Ludwig is compounded by that majority Court’s failure to set appreciable limits on “narrative” testimony. The instant appeal is a prime example of the foreseeable evidentiary excesses made possible by the holding, and why Ludwig is a dangerous precedent that should be discarded. According to the record, after the victim recounted that she disclosed the abuse, the child’s mother, sister and school principal, and two police officers also testified that the victim disclosed the abuse to each of them. Yet, there is no discern-able explanation as to why five reaffirmations of the victim’s disclosure were necessary background information about the investigation. Nor is there a plausible reason for three witnesses to testify similarly about the same-day disclosure to the police when disclosure is unchallenged. As this case illustrates, the potential for evidence to cross the line from “an explanation of the narrative” to improper bolstering of the victim’s testimony is increased by the sheer numerosity of witnesses who testify that the victim disclosed. Defendant does not directly challenge the judge’s evidentiary rulings, therefore given the posture of the appeal I agree that counsel is not ineffective for limiting her objections to the specific details of the abuse rather than the type of serial testimony presented in this case.
Counsel’s failure to object and request curative instruction for the prosecutor’s use of the testimony during summation is a different matter. The record establishes that the prosecutor made the testimony of non-victim witnesses the central theme of his argument that the victim’s claims of abuse should be treated as fact. Even within the confines of Ludwig, the prosecutor’s actions were improper because he relied on the testimony for the impermissible purpose of establishing that the defendant committed the acts as described by the victim.
The prosecutor argued to the jury that the case turned on whether the victim was telling the truth, and if the jurors believed the victim, they had to return a guilty verdict. He asked rhetorically, why would the victim “tell strangers, tell the police, me, you, [sic] grand jury” about the sexual abuse. The prosecutor implored the jurors to consider “why would [the victim] do this if it didn’t happen, if it wasn’t the truth.” To *699 persuade the jury that the abuse occurred, the prosecutor emphasized that the victim repeatedly disclosed the abuse to several different people, including in formal legal settings. The prosecutor declared that
“[t]his is about the fifth time she’s talked about this. . . . According to her testimony, first time was June 25th to the police .... Then the next time, month later when she came to see me and then testified before the grand jury. And then she had again talked about this to the doctors. So again that, that will be about five times when she came here and told you what happened . . . [S]he’s told the story or she’s told, given this, these facts a number of times.”
Again, near the end of his summation, the prosecutor asked the jury to consider why the victim would “go through all this, lie to all these people if this didn’t happen?”
These excerpts leave no doubt that the prosecutor sought to bolster the credibility of the victim and establish the fact of the abuse through the victim’s repeated disclosure of her allegations. By arguing to the jury that it could base its credibility determination on the fact that the victim disclosed the abuse on several occasions to different people, and by characterizing the victim’s disclosures as statements of fact, the prosecutor re-purposed the testimony and mischaracterized its meaning. In a case that hinged on the credibility of the victim, defense counsel could only address the devastating impact of this summation argument by objecting and requesting the judge instruct the jurors that they could not rely upon the testimony in the manner advocated by the prosecutor.
Under these circumstances, counsel’s failure to act constituted egregious error that cannot be excused, as the majority argues, as part of a reasonable defense strategy (majority op at 696). The majority speculates that counsel discounted the impact of summation because the non-victim testimony did not include details of the abuse. However, the prosecutor’s focus on the victim’s repeated disclosure was the basis for arguing that the abuse occurred. The fact that the non-victim witness testimony lacked details of the victim’s allegations was irrevelant to the prosecutor’s point. Thus, to counteract the persuasive effect of the prosecutor’s argument, defense counsel had to lodge an objection and request that the judge instruct the jury on the proper consideration to be accorded the *700 testimony. Counsel did not take these necessary minimal steps, and as a consequence her representation was ineffective, and denied defendant a fair trial (People v Baldi, 54 NY2d 137 [1981]).
Judges Pigott, Stein and Fahey concur; Judge Rivera dissents in an opinion; Chief Judge DiFiore and Judge Garcia taking no part.
Order affirmed.